**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**CYPRESS CREEK PARTNERS, LLC,**
*et al.* **PLAINTIFFS**

**v.**          **Case No. 4:20-cv-01005-KGB**

**UNITED NATURAL FOODS, INC.,**
*et al.* **DEFENDANTS**

## <u>ORDER</u>

Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, stay the proceedings and compel arbitration filed by defendants United Natural Foods, Inc. ("UNFI"); SUPERVALU, Inc. ("SUPERVALU"); SUPERVALU Holdings, LLC; SUPERVALU Holdings, Inc. ("SHI"); and SUPERVALU Wholesale Operations, Inc. ("SWO") (Dkt. No. 17).  Plaintiffs Cypress Creek Partners, LLC ("Cypress Creek"), Charles R. Evans II, Chris DeSalvo, and Michael Woods responded in opposition (Dkt. No. 20). Defendants filed a reply (Dkt. No. 24).  For the following reasons, the Court grants in part and denies in part defendants' motion (Dkt. No. 17).

### I.     Background

Cypress Creek is an Arkansas company that owns and operates grocery stores in central Arkansas (Dkt. No. 21, at 2).  Defendants are grocery suppliers (*Id.*).  On June 5, 2014, Cypress Creek and SHI executed a supply agreement (Dkt. No. 20-3) and an arbitration agreement (Dkt. No. 20-1).  The supply agreement provides in relevant part:

> This Agreement shall be governed by the laws of the State of Minnesota. . . . Customer and SUPERVALU acknowledge that any dispute between any or all of the entities comprising Customer and SUPERVALU relating to this Agreement would be subject to the provisions of the Mediation/Arbitration Agreement(s) entered into by the entity(ies) comprising Customer and SUPERVALU.

(Dkt. No. 20-3, at 8–9).

According to the arbitration agreement:

Customers and SUPERVALU agree as follows:

Any controversy, claim or dispute of whatever nature arising between Customers, or any of them, and SUPERVALU or any other SUPERVALU Entity, as defined below, including but not limited to those arising out of or relating to any agreement between Customers, or any of them, and any SUPERVALU Entity, or the breach, termination, enforceability, scope or validity thereof, whether such claim existed prior to, or arises on or after, the Execution Date (a "Dispute"), shall be resolved by mediation or, failing mediation, by binding arbitration.

(Dkt. No. 20-1, at 1).

The arbitration agreement further provides that a dispute "shall be determined by binding arbitration in Minneapolis, Minnesota.  The arbitration shall be conducted in accordance with such rules as may be agreed upon by the Disputing Parties, or failing agreement within 30 days after arbitration is demanded, in accordance with the Commercial Arbitration Rules of the American Arbitration Association" (*Id.*).  According to the arbitration agreement, "[t]he arbitration shall be governed by the substantive laws of the State of Minnesota, without regard to conflicts-of-laws rules, and by the arbitration law of the Federal Arbitration Act" (*Id.*).

On August 10, 2020, Cypress Creek initiated this action in the Circuit Court of Lonoke County, Arkansas (Dkt. No. 1, at 9).  Cypress Creek filed an emergency motion to stay arbitration and for temporary restraining order in that court (Dkt. No. 3).  On August 20, 2020, defendants removed the action to this Court (Dkt. No. 1).  On August 26, 2020, the Court denied as moot Cypress Creek's emergency motion to stay arbitration and for temporary restraining order (Dkt. No. 6).  Plaintiffs filed an amended complaint on October 5, 2020 (Dkt. No. 16).  In their operative amended complaint, plaintiffs allege breach of contract and fraud and seek declaratory, injunctive, and monetary relief (*Id.*, at 16–17).  Defendants filed the instant motion on October 26, 2020 (Dkt. No. 17).

## II.        Motion To Dismiss Pursuant To Rule 12(b)(1)

Defendants move to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  In *City of Benkelman, Nebraska v. Baseline Engineering Corporation*, 867 F.3d 875 (8th Cir. 2017), the Eighth Circuit Court of Appeals considered the proper standard for evaluating a motion to compel arbitration styled as a Rule 12(b)(1) motion to dismiss.  The Eighth Circuit first observed that the Supreme Court held in *Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*, 571 U.S. 49 (2013), that parties may not enforce forum-selection clauses through Rule 12(b)(3) motions to dismiss for improper venue.  867 F.3d at 880.  The Eighth Circuit next observed that, "[j]ust as a forum-selection clause has no bearing on the issue of whether venue is 'wrong' or 'improper,' an arbitration agreement has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction."  *Id.* at 880–81.  The Eighth Circuit therefore held that arbitration agreements do not strip federal courts of jurisdiction.  *Id.* at 881.  Accordingly, the Court denies defendants' motion to the extent that defendants seek dismissal of plaintiffs' claims for lack of subject matter jurisdiction.

## III.       Motion To Stay Proceedings And Compel Arbitration

Defendants move in the alternative to stay this action pending the arbitration of plaintiffs' claims pursuant to 9 U.S.C. § 3 (Dkt. No. 17, ¶ 6).

### A.        Governing Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "reflects a liberal federal policy favoring arbitration."  *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Under the FAA, "'[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by

3

arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007) (quoting 9 U.S.C. § 2). In reviewing a motion to compel arbitration, courts "ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR–ARK, LLC*, 841 F.3d 781, 783–84 (8th Cir. 2016) (internal quotations omitted). "If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted." *Id.*, at 784. "[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009) (quoting *Daisy Mfg. Co., Inc., v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir. 1994)).

"Though there is a liberal federal policy favoring arbitration agreements, a matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of the agreement." *Northpoint Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (internal quotations and citations omitted). To determine whether a valid agreement to arbitrate exists, the Court looks to the forum state's contract law. *Baker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir. 1998). In doing so, the Court is "not bound to follow the decisions of intermediate state courts," but their decisions are "highly persuasive." *First Tenn. Bank Nat. Ass'n v. Pathfinder Exploration, LLC*, 754 F.3d 489, 490-91 (8th Cir. 2014) (internal quotation marks and alterations omitted).

The Court reviews the motion to compel arbitration under a standard akin to the summary judgment standard. *Neb. Machinery Co. v. Cargotec Solutions, LLC*, 762 F.3d 737, 741–42 (8th Cir. 2014). Summary judgment is proper if there is no genuine issue of material fact for trial. *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.   Parties' Arguments

Defendants argue that there exists a valid and enforceable agreement to arbitrate (Dkt. No. 18, at 9). Defendants assert that the parties selected Minnesota as the forum and that Minnesota law governs the arbitration agreement (*Id.*). According to defendants, the arbitration agreement is valid and enforceable under Minnesota law because the agreement establishes the existence of an offer, acceptance, and consideration (*Id.*, at 9–10). Defendants further argue that the arbitration agreement is not unconscionable because neither the cost associated with pursuing arbitration in

Minnesota nor disparate bargaining power rise to the level of unconscionability (*Id.*, at 12–13). Defendants next argue that, even if Arkansas law applies, the arbitration agreement is still enforceable because it also establishes mutuality of obligation (*Id.*, at 14–15).  Defendants finally argue that the arbitrability of the parties' claims and the scope of the arbitration agreement are questions to be decided by the arbitrators (*Id.*, at 16).

In response, plaintiffs argue that Arkansas law applies and that the arbitration agreement lacks mutuality and consideration (Dkt. No. 21, at 5).  Plaintiffs argue that the arbitration agreement's Minnesota choice-of-law provision does not determine the validity of the arbitration agreement and that the law of the forum state, Arkansas, must apply (*Id.*, at 6).  According to plaintiffs, the arbitration agreement recites no consideration, there was no consideration given for its execution, and the arbitration agreement provides no benefit to Cypress Creek because arbitration in Minnesota would be very expensive (*Id.*, at 7).  Plaintiffs further argue that the arbitration agreement lacks mutuality of obligation because the agreement provides that the parties may seek emergency injunctive relief under certain circumstances which, plaintiffs argue, relate only to items that defendants could pursue (*Id.*, at 8).  Plaintiffs next argue that, because the arbitration agreement lacks consideration, the arbitration agreement is unenforceable even under Minnesota law (*Id.*, at 9).  Plaintiffs further argue that the arbitration agreement is unconscionable because plaintiffs had little to no bargaining power, because arbitration in Minnesota would cost more than $15,000.00, and because the arbitration agreement is an adhesion contract (*Id.*, at 11–12).  Finally, plaintiffs argue that, even if the arbitration agreement is enforceable, plaintiffs' claims are not governed by the arbitration agreement (*Id.*, at 13).

C.       **Analysis**

First, the Court concludes that Minnesota law, not Arkansas law, guides the Court's interpretation of the arbitration agreement. The parties' supply agreement contains a Minnesota choice-of-law provision and directs that any dispute would be subject to the arbitration agreement (Dkt. No. 20-3, at 8). The arbitration agreement designates Minnesota as the forum and directs that the arbitration shall be governed by Minnesota substantive law (Dkt. No. 20-1, at 1). Accordingly, Minnesota is the relevant forum under the arbitration agreement. Because the Court must "look to the forum state's contract law" to determine whether a valid agreement to arbitrate exists, *Northpoint Health Servs.*, 930 F.3d at 1030, the Court concludes that Minnesota law governs the Court's analysis of the validity of the arbitration agreement.

Second, the Court concludes that the arbitration agreement is a valid agreement. Under Minnesota law, the formation of a contract requires communication of a specific and definite offer, acceptance, and consideration. *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). Plaintiffs dispute only whether there was consideration. Consideration "means a negotiation resulting in the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other." *Baehr v. Penn-O-Tex Oil Corp.*, 104 N.W.2d 661, 665 (Minn. 1960). Under the arbitration agreement, both parties agreed to resolve any dispute by mediation or arbitration (Dkt. No. 20-1, at 1). Accordingly, there exists valid consideration because both parties voluntarily assumed an obligation upon the condition that the other party did the same.

The Court further concludes that the arbitration agreement is not unconscionable. Plaintiffs argue that the arbitration agreement is unconscionable because it would cost $15,000.00 to arbitrate in Minnesota. However, "the fact that a party will incur litigation costs and attorney's

fees in an arbitral forum does not make that forum unconscionable; [the party] would generally face those fees regardless of the forum." *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 568 (8th Cir. 2007). Accordingly, the Court rejects plaintiffs' argument that the cost of arbitration in Minnesota makes the arbitration agreement unconscionable.

Plaintiffs also argue that, under Minnesota law, the arbitration agreement is an adhesion contract and is therefore unconscionable. "A forum selection clause is unreasonable if contained in an adhesion contract which is the product of disparate bargaining power." *Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 88 (Minn. Ct. App. 1990). "[T]he adhesiveness of a contract depends upon factors such as the relative bargaining power of the parties, the opportunity for negotiation, the availability of the service for which the parties contracted, whether the service was a public necessity, and the business sophistication of the parties." *Id.* at 89. Mr. Evans in an affidavit represents that he participated in all negotiations with SHI, that Cypress Creek had no bargaining power, that the contracts were sent late on a Friday and were required to be executed that day, and that if plaintiffs had not executed the documents then they would not have been able to purchase groceries to supply their stores (Dkt. No. 20-4, at 1–2). However, the record before the Court currently does not reflect that plaintiffs had no opportunity for negotiation. Rather, the record before the Court indicates that Mr. Evans participated in all negotiations with SHI. Further, there is nothing in the record before the Court that indicates that plaintiffs could not have contracted with any other grocery suppliers. Additionally, plaintiffs likely have at least some business sophistication because, as plaintiffs allege in their operative amended complaint, they own and operate grocery stores in different counties in Arkansas, including Prairie, Saline, Lonoke, and Pulaski Counties (Dkt. No. 16, ¶ 14). Accordingly, the Court concludes that the arbitration agreement is not unconscionable.

Third, the Court concludes that the question of arbitrability is for the arbitrator to decide. The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). The Eighth Circuit has further held that parties agree to arbitrate gateway questions of arbitrability where an arbitration agreement incorporates the Rules of the American Arbitration Association ("AAA"). *See Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) ("By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability."). Here, the arbitration agreement states that any dispute arising out of any agreement between the parties, including the "enforceability, scope, or validity thereof . . . shall be resolved by mediation or, failing mediation, by binding arbitration." (Dkt. No. 20-1, at 1). The arbitration agreement also provides that the arbitration shall be conducted in accordance with rules as agreed upon by the parties or, if the parties do not agree, in accordance with the AAA Rules (*Id.*). Defendants represent that the parties have not agreed to any other rules (Dkt. No. 18, at 16). Plaintiffs do not provide evidence that the parties have agreed to any other rules. Accordingly, the arbitration agreement provides that the arbitrator should decide threshold questions of arbitrability.

## IV.    Conclusion

For the foregoing reasons, the Court grants in part and denies in part defendants' motion (Dkt. No. 17). The Court grants the motion to stay the proceedings and compel arbitration, but the Court declines to dismiss the case pursuant to Rule 12(b)(1). The Court directs the parties to proceed to arbitrate this dispute in accordance with the terms of the arbitration agreement. The Court stays the proceedings until arbitration is complete. The Court directs the parties to file a

status report with the Court within seven business days from when they receive the arbitration decision.

So ordered this 27th day of September, 2021.

Kristine G. Baker
United States District Judge